IN THE UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

PATRICIA L. WARD
AND ALBERT SCOTT WARD

        Plaintiffs,

v.           CASE NO. _____

GENERAL MOTORS, LLC

        Defendant,
_____/

## COMPLAINT

COMES Plaintiffs, PATRICIA L. WARD AND A. SCOTT WARD, by and through their attorneys and for their Complaint against Defendant, General Motors LLC, alleges and affirmatively states as follows:

## PARTIES

1. Plaintiffs, PATRICIA L. WARD AND A. SCOTT WARD ("Plaintiffs"), are married, adult individuals who reside in the State of Florida, Bay County.

2. Defendant, GENERAL MOTORS, LLC (hereinafter "GENERAL MOTORS" or "GM") is a Delaware limited liability company with its principal place of business in Michigan and is a citizen of both the State of Delaware and the State of Michigan. GENERAL MOTORS and is a warrantor of a vehicle that Plaintiffs purchased and is a merchant in goods of the kind involved in this case. General Motors LLC is 100% owned by General Motors Holdings LLC. General Motors Holdings LLC is a citizen of both the State of Delaware and the State of Michigan. General Motors Holdings LLC is 100% owned by General Motors Company. General

Motors Company is a publicly traded company. No publicly held entity owns 10% or more of the stock of General Motors Company. General Motors Company was incorporated in Delaware with its principal place of business in Michigan and is a citizen of both the State of Delaware and the State of Michigan. Defendant is engaged in the manufacture, sale and distribution of motor vehicles and related equipment and services. Defendant is also in the business of marketing, supplying, and selling written warranties to the public at large through a system of authorized dealerships, including the multiple dealership where the Plaintiffs tendered their 2018 Chevrolet Silverado 2500 (hereafter the "Vehicle") for multiple repairs.  Per the Florida Secretary of State, General Motors LLC's Registered Agent in Florida is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

## JURISDICTION AND VENUE

3.     This Court has federal question jurisdiction over this matter pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(B), in that the Plaintiffs claim more than $50,000.00 in damages, exclusive of interest and costs, and under the doctrine of supplemental jurisdiction as set forth in 28 U.S.C. § 1367.

4.     This Court has personal jurisdiction over Defendant who conducts business in the State of Florida, including the Northern, Middle, and Southern Districts of Florida.

5.     Venue is proper in this district under 28 U.S.C. §1391(b)(2) because operative events relevant to the Plaintiffs' claims, the warranty related repairs to the vehicle,

took part in this District and Division; thus, a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

## FACTUAL ALLEGATIONS

6. On or about July 31, 2021, Plaintiffs purchased from Prince Automotive Group, Inc. located in Valdosta, Georgia, one of Defendant's authorized dealers, a 2018 Chevrolet Silverado 2500 (the "Vehicle") manufactured and distributed by Defendant General Motors LLC, Vehicle Identification No. 1GC1KWEY9JF227864. The price of the Vehicle, excluding all collateral charges including registration charges, document fees, sales tax, but excluding bank charges and finance charges, totaled approximately $50,722.29. See **Exhibit A: Purchase Agreement**.

7. At the time of purchase, the Vehicle was accompanied by a factory warranty which, included but was not limited to, three (3) years or thirty-six thousand (36,000) mile bumper to bumper coverage, five (5) years or one hundred thousand (100,000) mile power train coverage, as well as other warranties fully outlined in the Defendant's new car warranty booklet.  A full copy of the warranty is in the Defendant's possession. Additionally, the Plaintiffs purchased an extended warranty at the time of purchase of their car for $4394.00, thus increasing the warranty.

8. Defendant GM's warranties covered any repairs or replacement parts needed during the warranty period due to defects in factory materials or workmanship.

9.  Shortly after purchase, Plaintiffs experienced the various defects listed below that substantially impair the use, value, and/or safety of the Vehicle to them. See **Exhibit B: Repair Invoices**

10.  Plaintiffs avers that the Vehicle has been subject to repair on at least eight (8) occasions for defects to the vehicle as reflected in the repair documents generated by Defendant's authorized dealer network and in Defendant's internal repair records for the subject vehicle:

   a.  **August 4, 2020**, where the odometer reflected 91,300, Plaintiffs presented the Vehicle for repair at a GM authorized dealership in connection with the Check Engine Light being on. The Defendant, through their authorized repair facility, attempted to repair the Vehicle.

   b.  **September 12, 2020**, where the odometer reflected 92,565, Plaintiffs presented the Vehicle for repair at a GM authorized dealership in connection with the Check Engine Light being on. The Defendant, through their authorized repair facility, attempted to repair the Vehicle.

   c.  **September 17, 2020**, where the odometer reflected 92,565, Plaintiffs again presented the Vehicle for repair at a GM authorized dealership in connection with the Check Engine Light being on. The Defendant, through their authorized repair facility, attempted to repair the Vehicle.

   d.  October 09, 2020, where the odometer reflected 92,795, Plaintiffs presented the Vehicle for repair at a GM authorized dealership in connection with

the Check Engine Light being on THREE (3) DAYS after pickup. The Defendant, through their authorized repair facility, attempted to repair the Vehicle.

   e. October 29, 2020, where the odometer reflected 92,996, Plaintiffs presented the Vehicle for repair at a GM authorized dealership in connection with the Check Engine Light being on again. The Defendant, through their authorized repair facility, attempted to repair the Vehicle.

   f. November 21, 2020, where the odometer reflected 93, 217, Plaintiffs presented the Vehicle for repair at a GM authorized dealership in connection with the Check Engine Light being on. The Defendant, through their authorized repair facility, attempted to repair the Vehicle.

   g. April 21, 2021, where the odometer reflected 96,739, Plaintiffs presented the Vehicle for repair at a GM authorized dealership in connection with the shifting hard and jerking when put in reverse AND the Check Engine Light being on. The Defendant, through their authorized repair facility, attempted to repair the Vehicle.

   h. July 5, 2021, where the odometer reflected 102689, Plaintiffs presented the Vehicle for repair at a GM authorized dealership in connection with the Vehicle shutting off while at idle then no start and the Check Engine Light being on. The Defendant, through their authorized repair facility, attempted to repair the Vehicle.

  All the defects listed above were found by the Defendant's authorized repair centers to be covered by, and were repaired under, the Vehicle's original warranty. See Exhibit B.

11. The Vehicle was out-of-service at least 54 days for the afore mentioned repairs. See Exhibit B.

12. After being afforded a reasonable opportunity to cure pursuant to 15 U.S.C. § 2310(e), the eight or more repair attempts and the prolonged time which the Vehicle has been out of service, indicate that Defendant was unable and/or failed to adequately repair the defects in the Vehicle as provided by Defendant's warranty.

13. Plaintiffs have justifiably lost confidence in the Vehicle's safety and/or reliability and said defects have substantially impaired the value of the Vehicle to Plaintiffs.

14. Said defects could not have reasonably been discovered by Plaintiffs prior to Plaintiffs' acceptance of the Vehicle.

15. Per Defendant's written Warranty as described above, Defendant designated its authorized dealers as the entities to receive notice of defects in the Vehicle for purposes of performing repairs on the vehicle. Full Warranty is in Defendant's possession.

16. Defendant was further notified of the defects in Plaintiffs' vehicle by Defendant's approval of warranty claims on the vehicle and reimbursement to its dealers of the same.

17. Plaintiffs has been and will continue to be financially damaged due to Defendant's failure to comply with the provisions of its express warranty.

18. Defendant engages in an aggressive advertising and marketing campaign to induce Plaintiffs and other consumers to purchase its vehicles from a dealership

authorized by Defendant to sell its vehicles and issue its written warranties to consumers.

19.     Defendant was in direct privity with the Plaintiffs based upon its role in the sale, distribution, and repair of the subject vehicle through its authorized sales and servicing agents including its Seller, Prince Auto Motive Group, Inc., as evidenced by the following:

   a.     Defendant enters into sales and service agreements with its authorized dealers that are in numerous counties of Georgia and Florida, including the county wherein this lawsuit was filed.

   b.     Defendant requires its authorized dealers to display its logo on each authorized dealer's sign outside the dealer. Defendant requires its authorized dealers to display its logo on the uniforms of authorized dealers' service personnel.

   c.     Defendant requires its authorized dealers to display Defendant's logo on the repair records that are given to authorized dealer's customers as receipts for service to their vehicles.

   d.     Defendant requires its authorized dealers to seek authorization for performing repairs as covered by Defendant's warranty.

   e.     Defendant makes the final decision as to whether repairs made to a vehicle is to be covered by Defendant's warranty.

   f.     Defendant reimburses its authorized dealers for repairs covered by Defendant's warranty.

g.  Defendant requires its authorized dealers to document repairs on repair invoices in a method prescribed by Defendant.

h.  Defendants provide authorized dealers with the specific limitations on the amount of time its dealers may seek reimbursement for specific warranty repairs to a vehicle.

i.  Defendant requires its authorized dealers to provide its customers with Defendant's written warranty when a new vehicle is sold by Defendant's authorized dealer.

j.  Defendant supervises each authorized dealer through a system of zone offices that is set up to monitor dealerships located within each respective county of the State of Florida or Georgia.

k.  Defendant provides its authorized dealers with repair manuals and service bulletins to repair vehicles manufactured and/or distributed by Defendant.

20. Based on the issuance of its written warranty and its contacts with Plaintiffs as detailed above, Defendant was in contractual privity with the Plaintiffs.

## FIRST CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

21. Plaintiffs realleges and incorporates Paragraphs 1-20 of this Complaint.

22. In connection with the sale of the Vehicle, Defendant offered a new vehicle limited warranty, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance.

23. Plaintiffs relied on Defendant's warranties when they agreed to purchase or lease the Vehicle and Defendant's warranties were part of the basis of the bargain.

24. Plaintiffs tendered their Vehicle for warranty repairs as referenced herein.

25. Plaintiffs gave Defendant a reasonable number of opportunities to cure said defect, but Defendant failed to comply with the terms of its express warranty provided to the Plaintiffs, by being unable to fully repair the defects under the Vehicle's warranty within a reasonable time.

26. As a result of said nonconformities, Plaintiff cannot reasonably rely on the Vehicle for the ordinary purpose of safe, comfortable, and efficient transportation.

27. Plaintiff could not have reasonably discovered said nonconformities with the Vehicle prior to Plaintiffs' acceptance of the Vehicle.

28. Plaintiff would not have purchased the Vehicle, had they known prior to their time of purchase, that the Vehicle contained the defects.

29. As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff has suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their Vehicle, and a diminution in the value of the Vehicle containing the defects identified herein.

30. Plaintiffs met all their obligations and preconditions as provided in the written warranties.

31. As a result of Defendant's breach of warranty, Plaintiffs have and will continue to suffer monetary and consequential damages.

## SECOND CAUSE OF ACTION
### Breach of Implied Warranty

32. Plaintiffs incorporates by reference all the above paragraphs 1-31 of this Complaint as though fully stated herein.

33. The Vehicle purchased by Plaintiffs was subject to implied warranties of merchantability under O.C.G.A. 11-2-314 (2020) running from Defendant to Plaintiffs by virtue of their purchase from Defendant's authorized dealer.

34. Defendant breached the implied warranty of merchantability in that the subject vehicle was not in merchantable condition when the Plaintiffs purchased it, and the subject vehicle is unfit for the ordinary purposes for which such vehicles are used.

35. The persistent defects identified herein are unreasonably dangerous because it can cause the Vehicle to severely malfunction while the Vehicle is in operation at any time, thereby exposing the Vehicle's driver, passengers, and others who share the road with them to serious risk of accidents and injury or death.

36. Plaintiffs notified Defendant of the defects in the Vehicle within a reasonable time after Plaintiff discovered them.

37. As a result of Defendant's breaches of the implied warranty of merchantability, Plaintiffs have suffered damages, including, but not limited to incidental and consequential damages, plus attorney fees and cost to recover same.

## COUNT THREE
### Breach of the Magnuson-Moss Warranty Act

38. Plaintiffs repeat and incorporate Paragraphs 1-37 as set forth above.

39. Plaintiffs are "consumers" as defined in the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301(3).

40. Defendant GM is a "warrantor" and "supplier" as defined in the MMWA, 15 U.S.C. § 2301(4) and (5).

41. The Vehicle is a "consumer product" as defined in the MMWA, 15 U.S.C. § 2301(l), because it is normally used for personal purposes.

42. The express warranty pertaining to the Vehicle is a "written warranty" as defined in the MMWA, 15 U.S.C. § 2301(6).

43. The actions of Defendant in failing to repair the defective Vehicle in a reasonable number of attempts constitutes a breach of the written and implied warranties covering the Vehicle and is a violation of the MMWA to which Plaintiffs are entitled to recover damages under 15 U.S.C. § 2310(d)(1) or a full refund under 15 U.S.C. § 2304(a)(4) along with reasonable attorney's fees under 15 U.S.C. § 2310(d)(2).

44. Plaintiffs performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of defendants as herein alleged.

45. Pursuant to the MMWA, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover as part of the judgment, costs, and expenses of the suit, including attorney's fees based on actual time expended. As a proximate result of the misconduct of

Defendant as alleged herein, and to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of the undersigned attorneys. Plaintiffs have incurred and continues to incur legal fees, costs, and expenses in connection therewith.

## COUNT IV
### Violation of the Georgia Fair Business Practices Act
### O.C.G. A. 10-1-390 et. seq.

46. Plaintiffs incorporates Paragraphs 1-45 as set forth above.

47. Defendant GM violated the Georgia Fair Business Practices Act by engaging in unfair and deceptive acts or practices in the conduct of consumer transactions.

48. Under the Georgia Fair Business Practices Act the term "unfair or deceptive acts or practices" includes but is not limited to, "a. Representing that goods or services are of a particular standard, quality, or grade . . . if they are of another". See O.C.G.A. 10-1-393(b)(7).

49. Defendant represented it could fix or resolve the Vehicle's serious defects and nonconformities in a reasonable number of attempts.

50. Defendant, after each repair attempt, led Plaintiffs to believe that the Vehicle had been repaired and was free of nonconformities. However, the Vehicle continued to have defects and nonconformities and had to be returned for repairs on multiple occasions.

## DAMAGES

51. As a direct and proximate result of Defendant's violations of their obligations, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs prays for judgment against Defendant as follows:

a. Diminution in value of the vehicle and incurred and/or needed costs of repair.

b. All incidental and consequential damages incurred.

c. Reasonable attorneys' fees, witness fees and all court costs and other fees incurred; and

d. Such other and further relief that the Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

NOW COMES Plaintiffs hereby demand a trial by jury in the above cause.

Dated: July 16, 2022

> Respectfully submitted
>
> WISE PLLC
>
> By: *Benjamin Z. Wise*
> Benjamin Z. Wise, MSB 99652
> WISE PLLC
> Post Office Box 4641
> Jackson, Mississippi 39296
> Telephone: (601) 500-7484
> Facsimile: (866) 311-7480
> Email: ben@wisepllc.com
> Attorney for the Plaintiffs
> *Pro Hac Vice* motion pending